### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **LENISHA J PARKER,** | § | |
| *PLAINTIFF,* | § | |
| | § | **CIVIL ACTION NO.** |
| | § | **4:25-cv-01075** |
| | § | |
| **V.** | § | |
| | § | |
| **BOND GREENSPOINT** | § | |
| **BAIL BOND, LISA GAIL** | § | |
| **PORTER, AND** | § | |
| **DANIEL PRICE,** | § | |
| *DEFENDANTS,* | § | |

## PLAINTIFF'S FEDERAL COMPLAINT[1]

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Lenisha Janea Parker ("Plaintiff"), files this Amended Petition against Defendants, Daniel Price, Lisa Gail Porter, Sheriff Gonzalez and Harris County (collectively "Defendants"), and in support thereof shows as follows

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as the claims arise under federal law, including 42 U.S.C. § 1983. The Court also has jurisdiction under 28

---

[1] Plaintiff originally filed this case in Texas court as an original "[state court]**petition**," The [state court] petition was later amended while in state court. Harris County removed the case to the United States Southern District of Texas. Harris County and the other defendants were dismissed without prejudice to refiling. Defendant, Daniel Price, a/k/a Kenneth Price moved to dismiss the live pleadings "Plaintiff's Amended [state court]**Petition**" mischaracterized as Amended Complaint under Rule 12(b)(6). Plaintiff files this her first amending of her Complaint in response to the defendant's motion to dismiss. Rule 15(a)(1) provides that a plaintiff may amend its complaint once without leave of the court or consent of the defendants within twenty-one days of service of a Rule 12(b) motion as a matter of course. The amendment allows the facts and parties to be clarified, state a claim, and conform to federal standards.

U.S.C. § 1343(a)(3) for the enforcement of civil rights. Supplemental jurisdiction over Plaintiffs' state law claims is proper under 28 U.S.C. § 1367(a).

Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391(b) because all events and omissions giving rise to these claims occurred in Harris County, Texas.

## PARTIES

1. Plaintiff, Lenisha Parker, is an individual who is a resident of Harris County, Texas.

2. Defendant, Deputy Kenneth D. Price a/k/a Daniel Price, a state actor, in his individual capacity as an officer acting under the color of law for Harris County. Defendant, Harris County, Texas, is a governmental unit existing within Harris County.

3. Defendant, Ed Gonzalez, in his official capacity as Policymaker in the area of law enforcement as Sheriff of Harris County.

4. Defendant, Lisa Porter, in her official capacity as Sheriff of Harris County.

## FACTUAL BACKGROUND

5. On a seemingly ordinary workday in January 2023, Plaintiff Lenisha Janea Parker's life was turned upside down by a traumatic, warrantless seizure orchestrated by a state actor, Kenneth "Daniel" Price while under color of state law and Harris County.

6. Ms. Parker, a mother, who works as a judicial clerk of court, and recent college graduate with no criminal record, was leaving work for her lunch break.

7. She had no reason to expect that what followed would be an egregious abuse of authority and violation of her constitutional rights.

8.  As she drove through her neighborhood, she began to notice suspicious vehicles circling her home.

9.  One vehicle, a blue Nissan pickup truck, tailed her closely. Uneasy but unaware of the danger about to unfold, she left her home and drove to a nearby public area at a Chipotle restaurant parking lot.

10. As she parked, the driver of the blue truck, later identified himself as Daniel Price, (ultimately identified as Defendant, Harris County Deputy Kenneth D. Price) approached her window without announcing himself.

11. Price aggressively asked if she was "Lenisha Park." Alarmed, Ms. Parker told the man to leave her alone, reiterating that she did not know who he was.

12. Price trailed her into the restaurant. He maintained an uncomfortably close distance as she tried to ignore him.

13. When she returned to her vehicle, Price suddenly declared, "I'm with the police department. You're under arrest."

14. Ms. Parker, startled and confused, repeatedly asked what she was being arrested for but Price gave no explanation.

15. Shortly thereafter, other men, one Hispanic and one white, arrived in separate unmarked vehicles, including a black Dodge Charger.

16. A male officer performed a full pat-down search of Ms. Parker in public view in the parking lot, handcuffed her, and placed her in the back of a black Chevy Tahoe.

17. Ms. Parker, still receiving no formal identification, badge, or warrant, was transported in this personal vehicle with no rear partition, distinctly not a patrol unit.

18. The officers drove her to her residence, and demanded they be allowed to search it. She refused unless they allowed her to accompany them and release her.

19. Price and the others refused, instead they retrieved her house key from inside her purse, which they had confiscated without her consent.

20. Price entered her house with two other men and went through her belongings. They entered her home without her consent or a search warrant.

21. Ms. Parker was still in custody when this illegal search occurred. There was no search warrant for her home that ever existed. She repeatedly asked to see a warrant. No warrant was ever produced.

22. When her brother-in-law arrived and inquired about her destination, he was given no information.

23. Once the unauthorized search concluded, Price removed the handcuffs from behind her back and re-shackled her hands in front to allow her to walk inside the house.

24. On the day of the initial handcuffing, bystanders deputies repeatedly referred to Price as a "lead detective."

25. He displayed a badge and placed Ms. Parker in the back of a Harris County Sheriff's truck.

26. At the time, Ms. Parker was not on bond for any offense, and no legitimate basis existed for the detainment or arrest.

27. Parker's brother-in-law arrived and witnessed these events, but Price and his accomplices refused to disclose her destination.

28. From there, Price drove her to the Harris County Jail, but oddly she noticed that he did not seem to know how to process her.

29. Ms. Parker observed Price making multiple phone calls and asking other officers at the facility for guidance on how to complete intake paperwork.

30. He even asked the magistrate's assistant how to fill in the forms, demonstrating a shocking lack of training or authority.

31. He hand wrote out the documentation citing an alleged warrant that to date has never surfaced.

32. Once Price got off the computer, Ms. Parker was brought before a magistrate, an Indian or Middle Eastern woman, who read off alleged charges from the handwritten information provided by Price purported to be from Tarrant County, referencing an alleged case Ms. Parker had no knowledge of.

33. The hearing officer's name stamped on the custody and detention warnings was Lisa Gail Porter.

34. She failed to protect or intervene as Lenisha Parker's constitutional rights were violated. She had no charges against Parker in her system and she failed to investigate.

35. She concluded Ms. Parker should be held on a $5,000 bond for a felony warrant that did not exist.

36. A simple inquiry with Tarrant County as the alleged county issuing a suspicious City of Fort Worth warrant would have dispelled this falsehood.

37. It is common legal knowledge for a criminal magistrate that Counties do not issue city warrants.

38. This conflict should have been a red flag to the magistrate triggering the need for further investigation, intervention and protection of Ms. Parker..

39. No actual physical or digital warrant was presented.

40. Her name did not appear in the system, and local bail bond companies, including Greenspoint Bail Bonds, informed her family they were unable to locate her in custody.

41. Despite this, she remained jailed and incommunicado from Friday until Sunday. A bond could not be posted because she was not in the system,

42. Price conspired with other law enforcement officers to carry out this illegal kidnapping and false imprisonment, causing her to miss returning to work on that Friday.

43. Harris County actions were unlawful and caused significant harm and distress to Parker.

44. The Harris County Jail and Magistrate further violated Ms. Parker's rights and failed to intervene and protect Ms. Parker's constitutional rights.

45. At the time of the initial harassment and stalking, Ms. Parker was not on bond for any offense, and no legitimate basis existed for this ongoing conduct.

46. She was never formally booked. There is no record of her arrest in the Harris County system.

47. There is no documentation that Ms. Parker was ever in the Harris County jail system.

48. Plaintiff was held until her family paid a bond for charges never explained to her. After her release, she contacted Tarrant County and received a letter from the District Attorney confirming that there were no pending charges or warrants against her.

49. The bond company had to close the case because no court information or charges ever manifest.

50. Ms. Parker endured humiliating and dehumanizing treatment while in custody.

51. She was forced to strip, cough, and squat during intake. She was denied underwear, a bra, and issued oversized plastic shoes.

52. She was not allowed to wear her own undergarments or shoes.

53. She was housed with others in a jail pod without a blanket, sleeping on a thin mat on a steel slab.

54. At one point, she was nearly involved in a fight between other detainees due to tensions within the overcrowded unit. She ate nothing from Friday to Sunday and used the bathroom only once because she could no longer hold herself from urinating.

55. The emotional trauma was compounded by the fact that she could not contact her children, and that her family had no idea where she was being held.

56. Upon release on Sunday, Ms. Parker's friend picked her up. She was too traumatized to return home and instead stayed elsewhere.

57. When she did return to her home, she found her personal belongings violated and ransacked.

58. Her laundry had been pulled from the washing machine, her gun case removed from beneath her bed, decoration containers in the garage displaced, and her shower curtain torn down.

59. The invasion was deeply personal and violating. She cleaned her house before retrieving her children because she felt it was no longer a safe or sacred space. The impact of the incident did not end with her release.

60. Ms. Parker never received a court date, no indictment, and no resolution.

61. Eventually, the bond company closed her case, informing her that the court had no record of any pending charges. Her name had simply "disappeared."

62. No documentation ever surfaced to support the alleged Tarrant County warrant.

63. Public records confirm that there were, and are, no criminal charges pending against her in that jurisdiction.

64. After Ms. Parker's release, Daniel Price called Ms. Parker and "apologized," admitting that she had done nothing wrong and that there was no valid warrant. But the harassment did not stop.




65. In the weeks that followed, Ms. Parker was affected by Price's stalking her.

66. Price would frequently park down the street from her house.

67. He would follow her in traffic

68. He even appeared at her workplace.

69. She captured at least one of these incidents on video and reported a clear license plate number: a white Chevy Tahoe with plate number 1377414, observed on March 28, 2023.

70. On May 3, 2023, Defendant Price returned to Ms. Parker's home without cause.

71. He loitered in the vicinity, surveilling her residence.

72. This behavior amounted to more than stalking; it felt like intimidation to her.

73. Price again contacted Ms. Parker, this time threatening her 78-year-old aunt by phone, stating he would "bust her screen door down."

74. He was acting as a rogue law enforcement officer and color of law.

75. He intentionally misidentified himself as Daniel Price, instead of Kenneth D. Price,

76. He harassed anyone he believed was associated with Ms. Parker.

77. On June 20, 2023, Ms. Parker once again caught Price on video at her residence, continuing his pattern of stalking.

78. Further documentation of his ongoing, unprovoked targeting of Ms. Parker and her family.

79. The harassment continued until August 2023, when Ms. Parker was ultimately forced to move for her own safety.

80. Harris County and Sheriff Ed Gonzalez enabled Price based on its institutional deliberate indifference and systemic failure.

81. Prior to Price abusing his authority with Ms. Parker, Price unlawfully arrested at least three other people without probable cause, Cleothia Hubbard, Marina Rodriguez, and Eduardo Mendez.

82. Each of the individuals' cases were dismissed based on the lack of probable cause on charges initiated by Price as the complaining witness for charges of resisting arrest, interference with public duties, and evading arrests.

83. He was not disciplined by Harris County or the policymaker in the area of law enforcement for Harris County for the previous unlawful arrests in 2018 through 2019.

84. The Harris county district attorney was required to place Price on the Brady Disclosure list to criminal defense counsel for any case involving Price.

85. He has been on the Brady disclosure list since 2015, for discipline before Sheriff Gonzalez was elected after an internal affairs investigation determined that he engaged in a violation of HCSO policy. He was suspended for 90 days.

86. Ms. Parker's experience is profound evidence of deliberate indifference in the need for supervision, oversight, discipline, investigation of its officers.

87. Harris County through Price, under unclear pretext based on false charges that was wholly preventable.

88. Price's defendants' actions, individually and jointly, shattered the sanctity of her home, her body, her peace of mind, and her constitutional rights.

89. Despite changing residences, the emotional scars continue. She now suffers from post-traumatic stress disorder, chronic anxiety, and depression, all confirmed by her treating therapist.

90. She experiences acute fear whenever she sees law enforcement, and cannot drive without suffering chest tightness and emotional distress.

91. Her arrest was not only unlawful, it was entirely fabricated by the admission of Price.

92. This entire operation was orchestrated by a rogue law enforcement agent masquerading as Daniel Price as a result of Ed Gonzalez and Harris County's failure to discipline or supervise Price and other deputies demonstrating a pervasive practice of criminal kidnapping, and false imprisonments masquerading as lawful arrest for crimes with officers acting as the complaining witnesses.

## HARRIS COUNTY, TEXAS, AND SHERIFF ED GONZALEZ MONELL AND SUPERVISORY LIABILITY CLAIMS

1.      Harris County and Ed Gonzalez are liable for his failure to train, supervise, or discipline his officers based on their deputies's actions. Sheriff Gonzalez failed to train Daniel Price to refrain from seizing individuals like the Plaintiff, from illegal search, detention and false arrest based on false imprisonment in violation of the 4th and 14th Amendments.

2.      Defendant Harris County is liable to Plaintiffs as a result of the policy and practice of unlawful arrest without sufficient evidence or probable cause. In addition, Harris County failed to protect Plaintiff violation of the Fourth and Fourteenth Amendments by implementing policies or procedures to provide additional training, discipline or supervision

of deputies who have violated the constitutional rights of others in the past, like Price in this case.

3.      Price violated clearly established law in the Fifth Circuit since well before 2015 that an officer must have probable cause to show that a crime has been committed before an arrest can be made and more particularly when the officer is the complaining witness.

4.      Defendant Harris County by and through its agents, staff, officers, or employees, violated Plaintiffs' constitutional rights to be free from unreasonable seizures, and searches by causing harm to Plaintiff Leneisha Parker as a result of the unlawful violations.

5.      Ms. Parker was forced to go to jail instead of back to work or home with her children

6.      She had to pay a $5000.00 bond on charges that did not surface and the humiliation of being arrested in front of his family.

7.      Defendant Harris County's policymaker, Sheriff Gonzales, acting under the color of state law and within the scope of its responsibilities and/or employment and authority, intentionally and with conscious, callous, deliberate indifference deprived Plaintiffs of their constitutional rights to be free from unreasonable unlawful seizure and searches by failing to train, supervise or discipline its officers.

8.      As such, Plaintiff sues Harris County and its policymaker, Sheriff Gonzalez, as a state actor acting under the color of law, pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's liberty and freedom interests.

**Ratification by Harris County and Pattern/ Practice of Excessive Force**

9.      Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive and with regard to all causes of action.

12

10.     Plaintiff had his rights violated and was injured due to the policies, practices, customs, and procedures of Harris County.

11.     Defendant Harris County has a practice, custom, culture, procedure, and training of permitting and encouraging arrests without probable cause.

12.     No person operating under Harris County authority has been disciplined or reprimanded after the investigation of this incident, thereby ratifying the conduct set forth above.

13.     Harris County either determined that there was partial misconduct and violation and just a menial error occurred or failed to investigate and excuse unlawful arrests.

14.     Defendant Harris County and its deputies have a pattern and practice of using unlawful arrest specifically with its deputies acting as complaining witnesses and failing to protect them from the use of unlawful arrests, malicious prosecution and false imprisonment.

15.     Harris County and Gonzalez failed to train and supervise its agents, staff, officers, and employees after prior past unreasonable, unconstitutional conduct that resulted in a culture of emboldened behavior.

16.     This includes Stensland who based on this behavior of unlawful arrest herein likely had a history of complaints.

17.     Defendant Harris County has a practice, custom, culture, procedure, and training of permitting and failing to discourage its agents, staff, officers, and employees not to arrest individuals without probable cause.

18.     In another case, Harris County Deputies Stensland, Adolfo Villanueva, Joshua Bass each illegally detained Ken Brown and his children in violation of their constitutional rights because they had no incentive not to do so.

19.     There will be no punishment, retraining, awards, or promotions for refraining from unconstitutional conduct to stop constitutional violations by colleagues.

20.     There will be no disciplinary action for arresting for lack of probable cause.

21.     Defendants' Harris County and Sheriff Gonzalez's policies, practices, and/or customs were a moving force in causing the unconstitutional conduct alleged herein.

22.     Plaintiff intends to produce evidence through records of discipline records that do not include disciplining officers for arrests without probable cause that there was a failure to supervise and correct the wrongful and illegal behavior of its agents, staff, officers, and employees; there was a culture of silence and tolerance of such conduct, and there was a failure to train to result in false arrest, as well as First Amendment violation retaliating by engaging in behavior to punish when it is not the usual response to do so under the circumstances.

23.     For example: On September 7, 2021, BURNEY, CHAZ was arrested by Matthew Stensland for fleeing/ attempting to elude police officer Stensland also acted as the complaining witness. On     9/15, 2021, the case was dismissed by the Judge because there was no probable cause.

24.     On September 8, 2021, LEONARD, CHRISHADRA was arrested by Matthew Stensland     interfering with duties of a public servant. Stensland also acted as the

14

complaining witness. On August 3, 2022, the case was dismissed because it cannot be proven beyond a reasonable doubt.

25.    On November 9, 2021, ROBLES, ENRIQUE MARTIN was arrested by Matthew Stensland Evading Arrest/Detention. Stensland also acted as the complaining witness. On November 17, 2021 the case was dismissed because the Judge found no probable cause.

26.    On 1/3, 2022, MCCOLLUM, TISHA LOUISE   was arrested by Matthew Stensland failing to identify to a police officer. Stensland also acted as the complaining witness. On August 8, 2022, the case was dismissed because there was no evidence of guilt.

27.    On July27, 2022, CLARK, TANGANQIKA was arrested by Matthew Stensland interfering with duties of a public servant. Stensland also acted as the complaining witness. On August 3, 2022 the case was dismissed because the Judge found no probable cause.

28.    On April 10, 2023, GARZA, ALPHA OMEGA was arrested by Matthew Stensland Resist Arr-Search. Stensland also acted as the complaining witness. On April 17, 2023, the case was dismissed because the Judge found no probable cause.

29.    On June 2, 2019, GUTIERREZ, JESSI EBANY was arrested by Matthew Stensland Resist Arr-Search. Stensland also acted as the complaining witness. On June 7, 2019, the case was dismissed because the Judge found no probable cause.

30.    On March 20, 2022, RANDOLPH, MCKINDLEY was arrested by Joshua Bass Evading Arrest/Detention. Joshua Bass also acted as the complaining witness. On March 21, 2022, the case was dismissed because the Judge found no probable cause.

31.     On October 13, 2021, HICKMAN, KEITH was arrested by Joshua Bass for evading arrest/detention. Joshua Bass also acted as the complaining witness. On October 14, 2021, the case was dismissed because the Judge found no probable cause.

32.     These unlawful actions by Steinsland and Bass occurred prior to March 19, 2023 and had Sheriff Gonzalez or Harris County addressed their actions the Plaintiffs would not have been unlawfully detained or arrested out of concern they would again face discipline or have to go back to training.

33.     Although the above data set is limited, reflecting actions by only two deputies, or of the approximately 2,500 sworn officers in Harris County between 2019 and 2023, there are many other cases involving arrest for crimes where officers act as the complaining witnesses that are dismissed for lack of probable cause.

34.     There are a significant number that are wholly preventable violations with responses after the first violations with additional training, retraining, or disciplining officers for intentional unlawful arrests.

35.     There are additional examples of other deputies who have engaged in unlawful practices of arrest without probable cause and unlawful use of force and could have served as disciplinary examples of arresting individuals in violation of the HCSO policies and the constitution will not be met with deliberate indifference.

36.     Additional examples include: On May 4, 2022, GERMAN, GADDIEL GAREB was arrested by Christian Villanueva for interfering with duties of a public servant. Christian Villanueva also acted as the complaining witness. On November 17, 2022, the case was dismissed because the Judge found no probable cause.

37.     On July 12, 2023, FORD, KENNETH W was arrested by Christian Villanueva for assault of a peace officer. Christian Villanueva also acted as the complaining witness. On July 12, 2023, the case was dismissed because the prosecutor determined there was no evidence of guilt.

38.     On December 28, 2024, GALCIA, ADOLFO was arrested by Christian Villanueva for Evading Arrest/Detention. Christian Villanueva also acted as the complaining witness. On December 29, 2024, the case was dismissed because the Judge found no probable cause.

39.      On February 9, 2024, FRAUSTO, DAVIDwas arrested by Christian Villanueva Evading Arrest. Christian Villanueva also acted as the complaining witness. On February 22, 2024, the case was dismissed because the Judge found no probable cause.

40.     On March 19, 2019, MCCADAMS, MELVIN was arrested for evading arrest/detention by Deputy Christopher Bolin. Christopher Bolin also acted as the complaining witness. Christopher Bolin also acted as the complaining witness. The case was dismissed based on lack of probable cause for the arrest.

41.     On February 19, 2021, LAZARD, QUINTON was arrested for interfering with duties of a public servant by Deputy Christopher Bolin. Christopher Bolin also acted as the complaining witness. The case was dismissed based on lack of probable cause for the arrest.

42.     On March 7, 2021, GUTIERREZ, PRISCILLA was arrested for interfering with duties of a public servant by Deputy Christopher Bolin. Christopher Bolin also acted as the complaining witness. The case was dismissed based on lack of probable cause for the arrest.

43.     On March 11, 2022, HERNANDEZ-JUAREZ, ANGEL was arrested for failing to identify to police officer false information by Deputy Christopher Bolin. Christopher Bolin

also acted as the complaining witness. The case was dismissed based on lack of probable cause for the arrest.

44.     On February 12, 2022, LEE, ELIJAH M was arrested for interfering with duties of a public servant by Deputy Christopher Bolin. Christopher Bolin also acted as the complaining witness. The case was dismissed based on lack of probable cause for the arrest.

45.     On September 5, 2020, MARTINEZ, ASHLEY was arrested for evading arrest/detention with a vehicle by Deputy Christopher Bolin. Christopher Bolin also acted as the complaining witness. The case was dismissed based on lack of probable cause for the arrest.

46.     On April 21, 2020, BOOKER, JEREMIAH was arrested for interfering with duties of a public servant by Deputy Christopher Bolin. Christopher Bolin also acted as the complaining witness. The case was dismissed based on lack of probable cause for the arrest.

47.     On AUGUST 28, 2020, RINCHIUSO, FRANCIS was arrested for interfering with duties of a public servant by Deputy Christopher Bolin. Christopher Bolin also acted as the complaining witness. The case was dismissed based on lack of probable cause for the arrest.

48.     On February 26, 2021, LOVELY, JAIONDRICK was arrested for interfering with duties of a public servant by Deputy Christopher Bolin. Christopher Bolin also acted as the complaining witness. The case was dismissed based on lack of probable cause for the arrest.

49.     On November 11, 2022, PARKS, JOSEPH was arrested for failing to identify to police officer false information by Deputy Christopher Bolin. Christopher Bolin also acted as the complaining witness. The case was dismissed based on lack of probable cause for the arrest.

50.    On JANUARY 15, 2022, MILLIGAN, ASHLYN was arrested for resisting arrest-search by Deputy Christopher Bolin. Christopher Bolin also acted as the complaining witness. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

51.    On October 14, 2020, SCOTT, BRANDON was arrested for evading arrest/detention with a vehicle by Deputy Christopher Bolin. Christopher Bolin also acted as the complaining witness. The case was dismissed based because it cannot be proven beyond a reasonable doubt, which would have resulted in an acquittal at trial..

52.    On December 5, 2022, MAYES, JOLANIE was arrested for evading arrest/detention with a vehicle by Deputy Christopher Bolin. Christopher Bolin also acted as the complaining witness. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

53.    On April 7, 2023, PALUMBO, SETH was arrested for assault of a peace officer by Deputy Christopher Bolin. Christopher Bolin also acted as the complaining witness. The case was dismissed based on lack of probable cause for the arrest, this case.

54.    On April 7, 2023, WILLIS, KRISTOPHER was arrested for obstruction of a roadway by Deputy Christopher Bolin. Christopher Bolin also acted as the complaining witness. The case was dismissed based on lack of probable cause for the arrest, this case.

55.    On February 24, 2021, RHEM, JOCEE JADA LEE was arrested for evading arrest/detention by Deputy Shane Wyrick. Shane Wyrick also acted as the complaining witness. The case was dismissed based on lack of probable cause for the arrest.

56.    On May 10, 2022, THEUS, PATRICK BERNARD was arrested for failing to identify to police officer false information by Deputy Shane Wyrick. Shane Wyrick also acted as the complaining witness. The case was dismissed based on lack of probable cause for the arrest.

57.    On December 2, 2022, LUTHI, KAITLYN was arrested for evading arrest/detention by Deputy Shane Wyrick. Shane Wyrick also acted as the complaining witness. The case was dismissed based on lack of probable cause for the arrest.

58.    On April 29, 2021, MORENO, DAVidentify VICTOR was arrested for failing to identify to police officer false information by Deputy Shane Wyrick. Shane Wyrick also acted as the complaining witness. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

59.    On AUGUST 22, 2021, STEVENSON, RAYQUAN COUVISIA KURTI was arrested for evading arrest/detention by Deputy Shane Wyrick. Shane Wyrick also acted as the complaining witness. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

60.    On AUGUST 19, 2021, REED, WILBERT DIONDRE was arrested for evading arrest/detention with vehicle by Deputy Shane Wyrick. Shane Wyrick also acted as the complaining witness. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

61.    On April 13, 2023, BENNETT, CHAKRIS LEE was arrested for resisting arrest-search by Deputy Shane Wyrick. Shane Wyrick also acted as the complaining witness. The case was dismissed based on lack of probable cause for the arrest.

62.     On February 8, 2023, BOLT, MARCUS TYRONE was arrested for evading arrest/detention by Deputy Shane Wyrick. Shane Wyrick also acted as the complaining witness. The case was dismissed based on lack of probable cause for the arrest.

63.     On April 5, 2023, RADLOFF, ERIC NORMAN was arrested for evading arrest/detention by Deputy Shane Wyrick. Shane Wyrick also acted as the complaining witness. The case was dismissed based on lack of probable cause for the arrest.

64.     On September 11, 2023, BROWN., COREY LAMOND was arrested for failing to identify to police officer false information by Deputy Shane Wyrick. Shane Wyrick also acted as the complaining witness. The case was dismissed based on lack of probable cause for the arrest.

65.     On February 23, 2024, JONES, PHILLIP was arrested for evading arrest/detention by Deputy Shane Wyrick. Shane Wyrick also acted as the complaining witness. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

66.     On October 1, 2024, VAUGHNER, DAMONE TERRELL was arrested for evading arrest/detention by Deputy Shane Wyrick. Shane Wyrick also acted as the complaining witness. The case was dismissed based on lack of probable cause for the arrest.

67.     On November 19, 2019, COSME, EDWIN was arrested for assault of a peace officer by Deputy Anthony Macias. Anthony Macias also acted as the complaining witness.. The case was dismissed based because it cannot be proven beyond a reasonable doubt, which would have resulted in an acquittal at trial.

68.     On December 14, 2020, FLORES, ERNESTO JR was arrested for assault of peace officer by Deputy Anthony Macias. Anthony Macias also acted as the complaining witness.. The case was dismissed based on lack of probable cause for the arrest. On May 23, 2020, SHARP, HENRY was arrested for evading arrest/detention with a vehicle by Deputy Anthony Macias. Anthony Macias also acted as the complaining witness.. The case was dismissed based because it cannot be proven beyond a reasonable doubt, which would have resulted in an acquittal at trial.

69.     On May 7, 2021, DUGAR, JAVONTRE was arrested for evading arrest/detention by Deputy Anthony Macias. Anthony Macias also acted as the complaining witness.. The case was dismissed based on lack of probable cause for the arrest.

70.     On April 10, 2021, ANTUNEZ, EDGARDO was arrested for evading arrest/detention with a vehicle by Deputy Anthony Macias. Anthony Macias also acted as the complaining witness.. The case was dismissed based on lack of probable cause for the arrest.

71.     On April 11, 2021, ANTUNEZ, EDGARDO was arrested for fleeing/ attempting to elude police officers by Deputy Anthony Macias. Anthony Macias also acted as the complaining witness.. The case was dismissed based on lack of probable cause for the arrest.

72.     On July 2, 2021, MENENDEZ, FRANKLIN was arrested for failing to identify to police officers false information by Deputy Anthony Macias. Anthony Macias also acted as the complaining witness.. The case was dismissed based on lack of probable cause for the arrest.

73.     On October 10, 2021, BROWN, BRITTANIE was arrested for ATT assault of a peace officer by Deputy Anthony Macias. Anthony Macias also acted as the complaining

witness.. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

74.    On JANUARY 21 , 2022, ABREGO ROMERO, MARCOS was arrested for evading arrest/detention with vehicle by Deputy Anthony Macias. Anthony Macias also acted as the complaining witness.. The case was dismissed based because it cannot be proven beyond a reasonable doubt, which would have resulted in an acquittal at trial.

75.    On JANUARY 27, 2022, AZIZ, AMAD was arrested for evading arrest/detention by Deputy Anthony Macias. Anthony Macias also acted as the complaining witness.. The case was dismissed based on lack of probable cause for the arrest.

76.    On February 27, 2022, HAWTHORNE, ARRYON was arrested for failing to identify to police officers false information by Deputy Anthony Macias. Anthony Macias also acted as the complaining witness.. The case was dismissed based on lack of probable cause for the arrest.

77.    On AUGUST 19, 2022, THOMPSON, MARQUIS was arrested for evading arrest/detention by Deputy Anthony Macias. Anthony Macias also acted as the complaining witness.. The case was dismissed based on lack of probable cause for the arrest.

78.    On September 30, 2022, EDWARDS, THADDEAUS was arrested for failing to identify to police officer false information by Deputy Anthony Macias. Anthony Macias also acted as the complaining witness.. The case was dismissed based on lack of probable cause for the arrest.

79.   On November 11, 2022, MONTOYA, RAEDYN was arrested for evading arrest/detention by Deputy Anthony Macias. Anthony Macias also acted as the complaining witness.. The case was dismissed based on lack of probable cause for the arrest.

80.   On July 14, 2023, FELIX, KEANDRE was arrested for failing to identify to police officers false information by Deputy Anthony Macias. Anthony Macias also acted as the complaining witness.. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

81.   On June 11, 2023, BRANTLEY, KENDRICK was arrested for failing to identify to police officer-Fugitive by Deputy Anthony Macias. Anthony Macias also acted as the complaining witness.. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

82.   On March 1, 2023, BROWN, MARCUS was arrested for evading arrest/detention with a vehicle by Deputy Anthony Macias. Anthony Macias also acted as the complaining witness.. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

83.   On April 12, 2023, GREEN, LOGAN was arrested for interfering with duties of a public servant by Deputy Anthony Macias. Anthony Macias also acted as the complaining witness.. The case was dismissed based on lack of probable cause for the arrest.

84.   On March 8, 2024, JONES, ANTHONY was arrested for failing to identify to police officer-Fugitive by Deputy Anthony Macias. Anthony Macias also acted as the complaining witness.. The case was dismissed based on lack of probable cause for the arrest.

85.    On March 24, 2023, WILDER, OBIE was arrested for interfering with duties of a public servant by Deputy Anthony Macias. Anthony Macias also acted as the complaining witness.. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

86.    On May 2, 2024, FORD JR., ANTHONY JAMES was arrested for evading arrest/detention by Deputy Anthony Macias. Anthony Macias also acted as the complaining witness.. The case was dismissed based on lack of probable cause for the arrest.

87.    On May 23, 2024, GAUDIELLO, DAVidentify was arrested for evading arrest/detention by Deputy Anthony Macias. Anthony Macias also acted as the complaining witness.. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

88.    On September 19, 2024, NICHOLS, COREY was arrested for interfering with duties of a public servant by Deputy Anthony Macias. Anthony Macias also acted as the complaining witness.. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

89.    On November 7, 2024, SISTO, SUNNY was arrested for evading arrest/detention by Deputy Anthony Macias. Anthony Macias also acted as the complaining witness.. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

90.    On July 18, 2021, PERKINS, TAQUERIA was arrested for interfering with duties of a public servant by Deputy Jonathan Gonzalez. Jonathan Gonzalez also acted as the complaining witness. The case was dismissed based on lack of probable cause for the arrest.

91.    On December 30, 2021, BELL, CHASITY NICOLE was arrested for interfering with duties of a public servant by Deputy Jonathan Gonzalez. Jonathan Gonzalez also acted as the complaining witness. The case was dismissed based on lack of probable cause for the arrest.

92.    On AUGUST 4, 2023, GARZA, GINO was arrested for evading arrest/detention by Deputy Jonathan Gonzalez. Jonathan Gonzalez also acted as the complaining witness. The case was dismissed based on lack of probable cause for the arrest.

93.    On April 21, 2021, SCOTT, HORACE was arrested for evading arrest/detention with a vehicle by Deputy Jonathan Gonzalez. Jonathan Gonzalez also acted as the complaining witness. The case was dismissed based on lack of probable cause for the arrest.

94.    On May 15, 2021, FAISON, BRANDON was arrested for assault of a peace officer by Deputy Jonathan Gonzalez. Jonathan Gonzalez also acted as the complaining witness. The case was dismissed based on lack of probable cause for the arrest.

95.    On May 16, 2021, FAISON, BRANDON was arrested for assault of a peace officer by Deputy Jonathan Gonzalez. Jonathan Gonzalez also acted as the complaining witness. The case was dismissed based on lack of probable cause for the arrest.

96.    On April 2, 2021, PRICE, ROKEISHA ROSHA was arrested for failing to identify to police officer false information by Deputy Jonathan Gonzalez. Jonathan Gonzalez also acted as the complaining witness. The case was dismissed based because it cannot be proven beyond a reasonable doubt, which would have resulted in an acquittal at trial..

97.    On March 5, 2022, HUNTINGTON, DEVAUGHN was arrested for fleeing/ attempting to elude police officers by Deputy Jonathan Gonzalez. Jonathan Gonzalez also

acted as the complaining witness. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

98.    On July 18, 2023, PAUL, TROY was arrested for failing to identify to police officer false information by Deputy Jonathan Gonzalez. Jonathan Gonzalez also acted as the complaining witness. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

99.    On July 19, 2023, HOLMAN, QUINDARIUS MARQUIL was arrested for interfering with duties of a public servant by Deputy Martin Garcia. Deputy Martin Garcia also acted as the complaining witness. The case was dismissed based on lack of probable cause for the arrest.

100.    On June 27, 2020, BROOKS, LEE was arrested for interfering with duties of a public servant by Deputy Martin Garcia. Deputy Martin Garcia also acted as the complaining witness. The case was dismissed based because it cannot be proven beyond a reasonable doubt, which would have resulted in an acquittal at trial..

101.    On January 25, 2023, HENRY, EMMANUEL SHEPHERD was arrested for evading arrest/detention by Deputy Martin Garcia. Deputy Martin Garcia also acted as the complaining witness. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

102.    On April 4, 2024, AGUIAR-MARTINEZ, LUIS A. was arrested for evading arrest/detention with a vehicle by Deputy Martin Garcia. Deputy Martin Garcia also acted as the complaining witness. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

103.    On December 12, 2020, TELLO, PABLO OSCAR was arrested for failing to identify to a police officer false information by Deputy AGUIRRE, NOE. The case was dismissed based on lack of probable cause for the arrest.

104.    On AUGUST 6, 2019, BENAVIDEZ, MARK ANTHONY was arrested for failing to identify to a police officer false information by Deputy BRANCH, BRANDON. Brandon Branch also acted as the complaining witness.. The case was dismissed based on lack of probable cause for the arrest.

105.    On November 11, 2019, BROWN, JOSEPH was arrested for failing to identify to police officer false information by Deputy BRANCH, BRANDON. Brandon Branch also acted as the complaining witness.. The case was dismissed based on lack of probable cause for the arrest.

106.    On March 21, 2020, LOZANO, KARINA was arrested for resisting arrest-search by Deputy BRANCH, BRANDON. Brandon Branch also acted as the complaining witness.. The case was dismissed based on lack of probable cause for the arrest.

107.    On March 28, 2020, CAREY, DUWAN was arrested for interfering with duties of a public servant by Deputy BRANCH, BRANDON. Brandon Branch also acted as the complaining witness.. The case was dismissed based on lack of probable cause for the arrest.

108.    On June 25, 2020, WILLIAMS, JOENIQUE was arrested for interfering with duties of a public servant by Deputy BRANCH, BRANDON. Brandon Branch also acted as the complaining witness.. The case was dismissed based on lack of probable cause for the arrest.

109.    On September 1, 2020, GABLE, TRAVIS was arrested for interfering with duties of a public servant by Deputy BRANCH, BRANDON. Brandon Branch also acted as the complaining witness.. The case was dismissed based on lack of probable cause for the arrest.

110.    On September 1, 2020, GABLE, TRAVIS was arrested for interfering with duties of a public servant by Deputy BRANCH, BRANDON. Brandon Branch also acted as the complaining witness.. The case was dismissed based on lack of probable cause for the arrest.

111.    On October 14, 2020, SIERRA, ALDOLFO was arrested for interfering with duties of a public servant by Deputy BRANCH, BRANDON. Brandon Branch also acted as the complaining witness.. The case was dismissed based on lack of probable cause for the arrest.

112.    On November 2, 2021, WARFORD, KEONDREA was arrested for resisting arrest-search by Deputy BRANCH, BRANDON. Brandon Branch also acted as the complaining witness.. The case was dismissed based on lack of probable cause for the arrest.

113.    On May 10, 2022, FLORES, CLAUDIA was arrested for interfering with duties of a public servant by Deputy BRANCH, BRANDON. Brandon Branch also acted as the complaining witness.. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

114.    On July 22, 2020, DURAN, JULIAN was arrested for resist arr-search by Deputy BRANCH, BRANDON. Brandon Branch also acted as the complaining witness.. The case was dismissed in the interest of justice, which would have resulted in an acquittal at trial.

115.    On December 28, 2020, DEROUSSELLE, GEOWANDA was arrested for resisting arrest-search by Deputy BRANCH, BRANDON. Brandon Branch also acted as the

complaining witness.. The case was dismissed based because it cannot be proven beyond a reasonable doubt, which would have resulted in an acquittal at trial..

116.    On February 14, 2023, HUMBLE, SHANTALACE ZISZELLE was arrested for interfering with duties of a public servant by Deputy Carpenter, Steven. Steven Carpenter, also acted as the complaining witness.. The case was dismissed based on lack of probable cause for the arrest.

117.    On June 12, 2023, REID DEONTA SEMAJ was arrested for failing to identify to police officer-Fugitive by Deputy Carpenter, Steven. Steven Carpenter, also acted as the complaining witness.. The case was dismissed based on lack of probable cause for the arrest.

118.    On July 26,2023, NJOKU, JUDE was arrested for interfering with duties of a public servant by Deputy Carpenter, Steven. Steven Carpenter, also acted as the complaining witness.. The case was dismissed based on lack of probable cause for the arrest.

119.    On June 19, 2024, RETTA, HECTOR was arrested for failing to identify to police officer false information by Deputy Carpenter, Steven. Steven Carpenter, also acted as the complaining witness.. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

120.    On April 12, 2024, MOORE, CAYDEN MICHAEL was arrested for evading arrest/detention by Deputy Carpenter, Steven. Steven Carpenter, also acted as the complaining witness.. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

121.    On November 7, 2024, MATTHEWS, BRANDON JAMES was arrested for evading arrest/detention by Deputy Carpenter, Steven. Steven Carpenter, also acted as the

complaining witness.. The case was dismissed based on insufficient evidence of defendant's guilt, which would have resulted in an acquittal at trial.

122.    The instances of false arrest, arrest made without probable cause and dismissed as a result made by Harris County deputies as a result of allowing such arrest without probable cause and not training or discipline for the false arrest, and these failures are the moving force behind Parker's unlawful, false arrest resulting in his false imprisonment.

123.    The failure to investigate, retrain, discipline, or supervise those officers who continued to act as complaining witnesses in arrests after prior false arrest and unconstitutional conduct promoted a culture, custom, and practice of unreasonable force and unlawful arrests against citizens.

124.    Again, Sheriff González and Harris County did not take those steps, namely discipline those officers so other officers would be discouraged, including the same officers and others from engaging in unconstitutional conduct, resulting in Plaintiffs en Brown and his family suffering violations of their rights.

125.    The high rate of hundreds dismissals with complaining witnesses as officers show a pattern of overreach or failure to assure that constitutional limits are respected.

126.    These instances underscore the lack of policies to discipline, train, retrain, audit and reform by Harris County to prevent future violations by its deputies.

127.    Despite these foregoing details of officers' ongoing, pervasive practice of deputies acting as complaining witnesses and arresting individuals without probable cause, or evidence of guilt acting as complaining witnesses essentially lodging *false complaints* against citizens, show a need for discipline or training by Sheriff González and Harris County but they failed

to properly investigate, train, retrain or discipline the deputies as evidenced by the deputies personal, training and discipline records.

128.    This failure to retrain or sanction the deputies was the direct cause and moving force behind the violation of the Plaintiffs' constitutional rights.

129.    If Sheriff González and Harris County had investigated, retrained, disciplined, and supervised their deputies after prior unconstitutional conduct, Plaintiffs would not have suffered violations of their rights.

130.    HCSO deputies, like employees in any other workplace, are influenced by the presence, or absence, of meaningful disciplinary consequences.

131.    When there is a clear threat of discipline for violating policies, employees are more likely to follow the rules, according to experts.

132.    Conversely, when there is little to no risk of disciplinary action, employees are more likely to disregard established policies, including constitutional requirements.

133.    The same principle applies to HCSO deputies, the lack of accountability or enforcement of departmental policies directly contributes to a culture where constitutional violations and misconduct are more likely to occur.

134.    There have been no policies implemented by Sheriff Gonzales and/or Harris County to as much as review the arrest reports by officers and audit for probable cause or review dismissals by the court based on a lack of probable cause and follow up with discipline after training or retraining.

135.    Instead of using Harris County's attorney office, and its policymaker in the area of legal to defend these cases Harris County could seek training on why their cases are dismissed for lack of probable cause and what consequences they face for constitutional violations.

136.    For example, HART, RAWLTYN, had the most number of arrests by officers as a complaining witness at 82.

137.    Rawltyn Hart was previously discovered to have a "throw down" gun concealed in his squad car.

138.    He was terminated and later rehired by Ed Gonzalez.

139.    Many of these officers, like Hart, Bolin, have to be disclosed in criminal cases under Brady disclosures based on their conduct as deputies

140.    The repeated violations of the constitutional rights by the same deputies are a direct result of the failures by Harris County and its policymaker to address the unlawful actions and support a pattern and practice based on a lack of policy by Harris County to correct these unlawful actions.

141.    Additionally, after Harris County and Ed Gonzalez have become aware of the unlawful practices of his deputies they ratify the actions by altering and concealing the information like videos, and other documentation.

## CLAIMS

142.    Plaintiff reasserts and incorporates all paragraphs in the complaint as fully stated herein.

143.    Violations under Article I of the Ku Klux Klan Act of 1871, "An Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and

for other Purposes" currently codified under 42 U.S.C. Sec. 1983. Fourteenth Amendment Due Process Violations 42 U.S.C. § 1983 Plaintiff was deprived of liberty without due process of law when Defendants held her without booking, charges, or formal arrest.

144.   Defendants, acting under color of law, violated Plaintiff's Fourth Amendment rights by detaining her without probable cause or warrant, entering and searching her home without judicial authorization or exigency, and unlawfully seizing her person and property.

**Monell Claims**

145.   Plaintiff reasserts and incorporates all paragraphs in the complaint as fully stated herein.

146.   The HCSO deputies average about 1800 arrests per year according to public records, about 5% of its arrests are unlawful false arrest without probable cause, and over 83% of the arrest without probable cause are against African American/Black or Latino/Hispanic, a steady average since 2018 until present and there is no retraining or discipline for intentional false arrest. This is a clear pattern of violation of equal protection.

147.   Ms. Parker is an African American woman.

148.   It has a practice, custom, culture, procedure, and training of permitting and encouraging excessive force against suspects, inmates, and persons in their custody.

149.   No person was adequately disciplined or reprimanded after the investigation of this incident, thereby ratifying the conduct set forth above.

150.    Defendant's policies, practices, and/or customs were a moving force in causing the unconstitutional conduct alleged herein.

151.    Plaintiff intends to show that there was a failure to supervise and correct the wrongful and illegal behavior of its agents, staff, officers, and employees.

152.    There was a culture of silence, concealment and toleration of such conduct, and there was a failure to train resulting in the unreasonable force and false arrest.

**State Law Claims**

153.    Here the individual defendants actions may be construed as ultra vires acts as alleged

154.    in the complaint and an appropriate alternative claim.

155.    Abuse of Process State Law Defendants willfully and without lawful authority confined Plaintiff, resulting in unlawful detention, humiliation, and damages.

156.    Trespass and Invasion of Privacy Price unlawfully entered Plaintiff's home and conducted a search in violation of her rights under Texas law.

157.    Intentional Infliction of Emotional Distress Defendants' conduct was extreme and outrageous, intended to cause and did cause severe emotional distress.


## V. ATTORNEY'S FEES

158.    Plaintiff is entitled to recover attorney's fees and costs to enforce his constitutional rights under 42 U.S.C. § 1983, 1985, and 1988 from Defendant.

## VI. DAMAGES

159.    As a direct and proximate result of the occurrence made the basis of this lawsuit, Defendants' acts as described herein, Plaintiff suffered: Emotional distress and mental

anguish; Loss of liberty and violation of constitutional rights; Legal expenses and costs; Out-of-pocket expenses, including bond payment; Exemplary and punitive damages.

160.    Plaintiffs suffered loss, and to endure anxiety, resulting in mental anguish and damages more fully set forth below.

161.    As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiffs have incurred the following damages:

a. Reasonable medical care and expenses in the past. These expenses were incurred by Plaintiff for the necessary care and treatment of their mental injuries resulting from the incident complained of herein, and such charges are reasonable and were usual and customary charges for such services in Harris County, Texas;

b. Reasonable and necessary medical care and expenses which will, in all reasonable probability, be incurred in the future;

c. Mental anguish in the past and Mental anguish in the future;

d. Punitive damages.

## VII. PRAYER FOR RELIEF

Plaintiff prays for judgment on his behalf against Defendant and asks this Court, after impaneling a jury and accepting the presentation of evidence, to enter judgment in favor of Plaintiff and against Defendant and to be identified in at least the following particulars:

A. Enter judgment for Plaintiff against Defendant;

B. Find that Plaintiff is the prevailing party in this case and award attorney's fees and costs, pursuant to federal law, as noted against Defendant;

36

C. Award damages to Plaintiff for the violation of his Constitutional rights claims;

D. Award pre-and post-judgment interest;

E. Award punitive damages against Defendant;

F. Cost of court; and

G. Grant such other and further relief as appears reasonable and just, to which, Plaintiff

shows herself entitled.

Respectfully submitted:
By: /s/U.A. Lewis
U.A. Lewis
SBN:  24076511
FBN:  1645666
P.O. Box 27353
Houston, TX 77227
T: (713) 570-6555
F: (713) 581-1017
myattorneyatlaw@gmail.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and the foregoing document has been sent to all known counsel by first class mail, electronic mail, telecopy, hand delivery, and/or certified mail, return receipt requested on all parties of record who have made an appearance in this case on July 21, 2025.

**/s/ U.A. Lewis**

**U.A. Lewis**