**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **LENISHA J PARKER,** | § | |
| *PLAINTIFF,* | § | |
| | § | **CIVIL ACTION NO. 4:25-cv-01075** |
| | § | |
| | § | |
| **V.** | § | |
| | § | |
| **KENNETH D PRICE,** | § | |
| *DEFENDANT,* | § | |
| | § | |
| | § | |
| | § | |
| | § | |

## PLAINTIFF'S FEDERAL COMPLAINT[1]

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Lenisha Janea Parker ("Plaintiff"), files this Second Amended Complaint against Defendants, Kenneth D. Price a.k.a Daniel Price ("Defendant"), and in support thereof shows as follows

## JURISDICTION AND VENUE

The Court also has supplemental jurisdiction over Plaintiff's state law claims is proper under 28 U.S.C. § 1367(a).

Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391(b) because all events and omissions giving rise to these claims occurred in Harris County, Texas.

---

[1] Plaintiff files this amended complaint consistent with the scope of the Court's order. Dkt. 62. Dismissing all other parties and claims other than those stated herein without prejudice.

**PARTIES**

1.      Plaintiff, Lenisha Parker, is an individual who is a resident of Harris County, Texas.

2.      Defendant, Deputy Kenneth D. Price a/k/a Daniel Price, a state actor, in his individual capacity.

**FACTUAL BACKGROUND**

3.      On a seemingly ordinary workday in January 2023, Plaintiff Lenisha Janea Parker's life was turned upside down by a traumatic, warrantless seizure orchestrated by Kenneth "Daniel" Price, while acting in his individual capacity as an officer.

4.      Ms. Parker, a mother who works as a judicial clerk of court, and a recent college graduate with no criminal record, was leaving work for her lunch break.

5.      She had no reason to expect that what followed would be an egregious abuse of authority and violation of her constitutional rights.

6.      As she drove through her neighborhood, she began to notice suspicious vehicles circling her home.

7.      One vehicle, a blue Nissan pickup truck, tailed her closely. Uneasy but unaware of the danger about to unfold, she left her home and drove to a nearby public area at a Chipotle restaurant parking lot.

8.      As she parked, the driver of the blue truck, later identified himself as Daniel Price, (ultimately identified as Defendant, Harris County Deputy Kenneth D. Price) approached her window without announcing himself.

9. Price aggressively asked if she was "Lenisha Park." Alarmed, Ms. Parker told the man to leave her alone, reiterating that she did not know who he was.

10. Price trailed her into the restaurant. He maintained an uncomfortably close distance as she tried to ignore him.

11. When she returned to her vehicle, Price suddenly declared, "I'm with the police department. You're under arrest."

12. Ms. Parker, startled and confused, repeatedly asked what she was being arrested for, but Price gave no explanation.

13. Shortly thereafter, other men, one Hispanic and one white, arrived in separate unmarked vehicles, including a black Dodge Charger.

14. A male officer performed a full pat-down search of Ms. Parker in public view in the parking lot, handcuffed her, and placed her in the back of a black Chevy Tahoe.

15. Ms. Parker, still receiving no formal identification, badge, or warrant, was transported in this personal vehicle with no rear partition, distinctly not a patrol unit.

16. The officers drove her to her residence and demanded that they be allowed to search it. She refused unless they allowed her to accompany them and release her.

17. Price and the others refused; instead, they retrieved her house key from inside her purse, which they had confiscated without her consent.

18. Price entered her house with two other men and went through her belongings. They entered her home without her consent or a search warrant.

19. Ms. Parker was still in custody when this illegal search occurred. There was no search warrant for her home that ever existed. She repeatedly asked to see a warrant. No warrant was ever produced.

20. When her brother-in-law arrived and inquired about her destination, he was given no information.

21. Once the unauthorized search concluded, Price removed the handcuffs from behind her back and re-shackled her hands in front to allow her to walk inside the house.

22. On the day of the initial handcuffing, bystander deputies repeatedly referred to Price as a "lead detective."

23. He displayed a badge and placed Ms. Parker in the back of a Harris County Sheriff's truck.

24. At the time, Ms. Parker was not on bond for any offense, and no legitimate basis existed for the detainment or arrest.

25. Parker's brother-in-law arrived and witnessed these events, but Price and his accomplices refused to disclose her destination.

26. From there, Price drove her to the Harris County Jail, but oddly, she noticed that he did not seem to know how to process her.

27. Ms. Parker observed Price making multiple phone calls and asking other officers at the facility for guidance on how to complete intake paperwork.

28. He even asked the magistrate's assistant how to fill in the forms, demonstrating a shocking lack of training or authority.

29. He hand-wrote out the documentation citing an alleged warrant that to date has never surfaced.

30. Once Price got off the computer, Ms. Parker was brought before a magistrate, an Indian or Middle Eastern woman, who read off alleged charges from the handwritten information provided by Price, purported to be from Tarrant County, referencing an alleged case Ms. Parker had no knowledge of.

31. The hearing officer's name stamped on the custody and detention warnings was Lisa Gail Porter.

32. She failed to protect or intervene as Lenisha Parker's constitutional rights were violated. She had no charges against Parker in her system and she failed to investigate.

33. She concluded Ms. Parker should be held on a $5,000 bond for a felony warrant that did not exist.

34. A simple inquiry with Tarrant County as the alleged county issuing a suspicious City of Fort Worth warrant, would have dispelled this falsehood.

35. It is common legal knowledge for a criminal magistrate that Counties do not issue city warrants.

36. This conflict should have been a red flag to the magistrate, triggering the need for further investigation, intervention, and protection of Ms. Parker.

37. No actual physical or digital warrant was presented.

38. Her name did not appear in the system, and local bail bond companies, including Greenspoint Bail Bonds, informed her family they were unable to locate her in custody.

39. Despite this, she remained jailed and incommunicado from Friday until Sunday. A bond could not be posted because she was not in the system.

40. Price conspired with other law enforcement officers to carry out this illegal kidnapping and false imprisonment, causing her to miss returning to work on that Friday.

41. Price's actions were unlawful and caused significant harm and distress to Parker.

42. At the time of the initial harassment and stalking, Ms. Parker was not on bond for any offense, and no legitimate basis existed for this ongoing conduct.

43. She was never formally booked. There is no record of her arrest in the Harris County system.

44. There is no documentation that Ms. Parker was ever in the Harris County jail system.

45. Plaintiff was held until her family paid a bond for charges never explained to her. After her release, she contacted Tarrant County and received a letter from the District Attorney confirming that there were no pending charges or warrants against her.

46. The bond company had to close the case because no court information or charges ever manifested.

47. Ms. Parker endured humiliating and dehumanizing treatment while in custody.

48. She was forced to strip, cough, and squat during intake. She was denied underwear, a bra, and issued oversized plastic shoes.

49. She was not allowed to wear her own undergarments or shoes.

50. She was housed with others in a jail pod without a blanket, sleeping on a thin mat on a steel slab.

51.    At one point, she was nearly involved in a fight between other detainees due to tensions within the overcrowded unit. She ate nothing from Friday to Sunday and used the bathroom only once because she could no longer hold herself from urinating.

52.    The emotional trauma was compounded by the fact that she could not contact her children, and that her family had no idea where she was being held.

53.    Upon release on Sunday, Ms. Parker's friend picked her up. She was too traumatized to return home and instead stayed elsewhere.

54.    When she did return to her home, she found her personal belongings had been violated and ransacked.

55.    Her laundry had been pulled from the washing machine, her gun case removed from beneath her bed, decoration containers in the garage displaced, and her shower curtain torn down.

56.    The invasion was deeply personal and violating. She cleaned her house before retrieving her children because she felt it was no longer a safe or sacred space. The impact of the incident did not end with her release.

57.    Ms. Parker never received a court date, no indictment, and no resolution.

58.    Eventually, the bond company closed her case, informing her that the court had no record of any pending charges. Her name had simply "disappeared."

59.    No documentation ever surfaced to support the alleged Tarrant County warrant.

60.    Public records confirm that there were, and are, no criminal charges pending against her in that jurisdiction.

61. After Ms. Parker's release, Daniel Price called Ms. Parker and "apologized," admitting that she had done nothing wrong and that there was no valid warrant. But the harassment did not stop.

 

62. In the weeks that followed, Ms. Parker was affected by Price's stalking her.

63. Price would frequently park down the street from her house.

64. He would follow her in traffic

65. He even appeared at her workplace.

66. She captured at least one of these incidents on video and reported a clear license plate number: a white Chevy Tahoe with plate number 1377414, observed on March 28, 2023.

67. On May 3, 2023, Defendant Price returned to Ms. Parker's home without cause.

68. He loitered in the vicinity, surveilling her residence.

69. This behavior amounted to more than stalking; it felt like intimidation to her.

70. Price again contacted Ms. Parker, this time threatening her 78-year-old aunt by phone, stating he would "bust her screen door down."

71. He was acting as a rogue law enforcement officer in the color of law.

72. He intentionally misidentified himself as Daniel Price, instead of Kenneth D. Price,

73. He harassed anyone he believed was associated with Ms. Parker.

74. On June 20, 2023, Ms. Parker once again caught Price on video at her residence, continuing his pattern of stalking.

75. Further documentation of his ongoing, unprovoked targeting of Ms. Parker and her family.

76. The harassment continued until August 2023, when Ms. Parker was ultimately forced to move for her own safety.

77. Harris County and Sheriff Ed Gonzalez enabled Price based on its institutional deliberate indifference and systemic failure.

78. Prior to Price abusing his authority with Ms. Parker, Price unlawfully arrested at least three other people without probable cause, Cleothia Hubbard, Marina Rodriguez, and Eduardo Mendez.

79. Each of the individuals' cases was dismissed based on the lack of probable cause on charges initiated by Price as the complaining witness for charges of resisting arrest, interference with public duties, and evading arrest.

80. He was not disciplined by Harris County or the policymaker in the area of law enforcement for Harris County for the previous unlawful arrests in 2018 through 2019.

81. The Harris County District Attorney was required to place Price on the Brady Disclosure list for criminal defense counsel for any case involving Price.

82. He has been on the Brady disclosure list since 2015, for discipline, before Sheriff Gonzalez was elected, after an internal affairs investigation determined that he engaged in a violation of HCSO policy. He was suspended for 90 days.

83. Ms. Parker's experience is profound evidence of deliberate indifference in the need for supervision, oversight, discipline, and investigation of its officers.

84. Harris County, through Price, acted under an unclear pretext based on false charges that were wholly preventable.

85. Price's actions, individually and jointly, shattered the sanctity of her home, her body, her peace of mind, and her constitutional rights.

86. Despite changing residences, the emotional scars continue. She now suffers from post-traumatic stress disorder, chronic anxiety, and depression, all confirmed by her treating therapist.

87. She experiences acute fear whenever she sees law enforcement, and cannot drive without suffering chest tightness and emotional distress.

88. Her arrest was not only unlawful, but it was also entirely fabricated by the admission of Price.

89. This entire operation was orchestrated by a rogue law enforcement agent masquerading as Daniel Price as a result of Ed Gonzalez and Harris County's failure to discipline or supervise Price and other deputies, demonstrating a pervasive practice of criminal kidnapping and false imprisonment masquerading as lawful arrest for crimes, with officers acting as the complaining witnesses.

## CLAIMS

10

90. Plaintiff reasserts and incorporates all paragraphs in the complaint as fully stated herein.

**State Law Claims- Ultra Vires Conduct**

91. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

92. Defendant Kenneth D. Price a/k/a Daniel Price acted outside any lawful authority conferred upon him when he seized Plaintiff without a valid warrant, transported her in custody, searched her home without consent or a warrant, caused her to be held on charges and a warrant that did not exist, and later continued to surveil, follow, and harass her.

93. These acts were not lawful discretionary acts within the scope of legitimate law-enforcement authority. Rather, Defendant Price acted without legal authority, without probable cause, without a valid warrant, and under false pretenses. Price was attempting to execute a warrant out of Travis County for Parker's then estranged husband and used the stale Fort Worth warrant from a closed case to detain Parker. His conduct was therefore ultra vires because he exceeded any authority he possessed and acted contrary to Texas law, constitutional limits, and the duties imposed on a peace officer.

94. As a direct and proximate result of Defendant Price's ultra vires conduct, Plaintiff suffered loss of liberty, humiliation, fear, mental anguish, invasion of her home, disruption of her work and family life, out-of-pocket losses, and other damages.

95. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

96. Defendant Price intentionally and willfully detained, restrained, handcuffed, transported, and caused Plaintiff to be jailed.

97. Plaintiff did not consent to the detention. Defendant Price lacked lawful authority to detain Plaintiff because there was no valid warrant, no probable cause, no pending charge known to Plaintiff, and no lawful basis for the seizure. Defendant Price later admitted that Plaintiff had done nothing wrong and that there was no valid warrant.

98. Defendant Price's conduct constituted false imprisonment and unlawful detention under Texas law because he willfully detained Plaintiff, without consent, and without legal authority.

99. As a direct and proximate result of Defendant Price's false imprisonment and unlawful detention, Plaintiff suffered loss of liberty, humiliation, emotional distress, mental anguish, missed work, bond-related expenses, fear, anxiety, and other damages.

100. Defendant Price intentionally entered Plaintiff's home without Plaintiff's consent and without a valid search warrant. Defendant Price obtained Plaintiff's house key from her purse while she was restrained and in custody, then used that key to enter and search her residence with other men.

101. Plaintiff had a possessory and privacy interest in her home. Defendant Price's unauthorized entry and search interfered with Plaintiff's right to exclusive possession of her residence and invaded the privacy, security, and sanctity of her home.

102. When Plaintiff later returned home, she found that her belongings had been disturbed and ransacked, including laundry pulled from the washing machine, a gun case removed from beneath her bed, garage containers displaced, and her shower curtain torn down.

103. Defendant Price's unauthorized entry and search constituted trespass to real property and an unlawful invasion of Plaintiff's privacy by intrusion upon seclusion.

104. As a direct and proximate result of Defendant Price's trespass and invasion of privacy, Plaintiff suffered humiliation, fear, mental anguish, loss of safety in her home, disruption of her family life, emotional distress, and other damages.

105. Defendant Price intentionally or recklessly engaged in extreme and outrageous conduct by targeting Plaintiff without lawful cause, following her, seizing her, handcuffing her, causing her to be transported and jailed without a valid warrant, entering and searching her home without consent, later admitting there was no valid warrant, and then continuing to follow, surveil, contact, intimidate, and harass Plaintiff and her family.

106. Defendant Price's conduct went beyond all possible bounds of decency and was atrocious and intolerable in a civilized community. A law-enforcement officer's use of apparent official authority to seize a person without lawful basis, invade her home, cause her to be jailed, and then continue stalking and intimidating her after release is conduct no reasonable person should be expected to endure.

107. Defendant Price's conduct caused Plaintiff severe emotional distress. Plaintiff suffered fear, humiliation, mental anguish, anxiety, depression, post-traumatic stress symptoms, loss of peace in her home, fear of law enforcement, difficulty driving, chest tightness, and emotional trauma requiring treatment.

108. As a direct and proximate result of Defendant Price's intentional infliction of emotional distress, Plaintiff suffered actual damages, including mental anguish, emotional distress,

13

medical and therapeutic expenses, disruption of her daily life, relocation-related harm, and other damages.

***Civil Stalking Tex. Civ. Prac. & Rem. Code Chapter 85 Against Defendant Kenneth D. Price a/k/a Daniel Price***

109.	Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

110.	Defendant Kenneth D. Price, also known to Plaintiff as Daniel Price, is liable to Plaintiff under Chapter 85 of the Texas Civil Practice and Remedies Code for damages arising from his stalking of Plaintiff.

111.	After Defendant Price unlawfully seized, detained, transported, and caused Plaintiff to be jailed without a valid warrant, he contacted Plaintiff and admitted that she had done nothing wrong and that there was no valid warrant. Despite that admission, Defendant Price did not leave Plaintiff alone. Instead, the harassment continued.

112.	On more than one occasion, Defendant Price engaged in harassing conduct directed at Plaintiff. In the weeks following Plaintiff's release from custody, Defendant Price repeatedly parked down the street from Plaintiff's home, followed Plaintiff in traffic, and appeared at Plaintiff's workplace. Plaintiff observed Defendant Price surveilling her residence and targeting her in a manner that served no lawful purpose.

113.	Plaintiff captured at least one incident on video and documented a white Chevy Tahoe with license plate number 1377414 on or about March 28, 2023. On or about May 3, 2023, Defendant Price again returned to Plaintiff's home without cause, loitered in the vicinity, and

14

surveilled her residence. On or about June 20, 2023, Plaintiff again captured Defendant Price on video at her residence, continuing the same pattern of stalking and intimidation.

114. Defendant Price's conduct was not isolated, accidental, or benign. It was a repeated course of conduct directed at Plaintiff after he had already used his claimed law-enforcement authority to seize her, search her home, transport her to jail, and cause her to be held on an alleged warrant that did not exist. Because Defendant Price had previously demonstrated the willingness and apparent ability to physically restrain Plaintiff, enter her home, remove her from her residence, transport her in custody, and cause her to be jailed, his continued presence near her home, in traffic, and at her workplace reasonably caused Plaintiff to fear for her safety and the safety of her family.

115. Defendant Price also threatened Plaintiff's family. Specifically, Defendant Price contacted Plaintiff again and threatened Plaintiff's 78-year-old aunt by phone, stating that he would "bust her screen door down." This threat was directed at a family member associated with Plaintiff and was part of Defendant Price's continuing course of harassment, intimidation, and stalking.

116. Defendant Price had the apparent ability to carry out his threats and intimidation. He had already shown Plaintiff that he could use his position, badge, vehicle, access, and claimed law-enforcement authority to detain her, enter her home, take her property, transport her, and place her in jail without a valid warrant or lawful basis. He could cause further harm, which caused Plaintiff reasonable fear.

117. Plaintiff clearly communicated that Defendant Price should leave her alone. During the initial encounter, when Defendant Price approached Plaintiff without announcing himself and

15

asked whether she was "Lenisha Park," Plaintiff told him to leave her alone and stated that she did not know who he was. Defendant Price ignored Plaintiff's demand and continued to pursue, detain, and later stalk her.

118. Defendant Price continued his harassing conduct after Plaintiff demanded that he leave her alone. His conduct included repeated surveillance of Plaintiff's home, following Plaintiff in traffic, appearing at Plaintiff's workplace, returning to her home without cause, threatening Plaintiff's elderly aunt, and continuing to appear at Plaintiff's residence through at least June 20, 2023. The harassment continued until approximately August 2023, when Plaintiff was forced to move from her residence for her own safety.

119. Plaintiff has evidence of Defendant Price's harassing conduct beyond Plaintiff's own perceptions and beliefs. That evidence includes video recordings of Defendant Price at or near Plaintiff's residence, documentation of the white Chevy Tahoe and license plate number 1377414, phone-contact evidence, witness and family-member information, and the surrounding records showing that Defendant Price previously seized Plaintiff and caused her to be detained despite the absence of any valid warrant or pending charges.

120. Defendant Price's conduct constitutes stalking under Chapter 85 of the Texas Civil Practice and Remedies Code because he engaged in harassing behavior on more than one occasion, his conduct caused Plaintiff to reasonably fear for her safety and the safety of her family, he threatened harm to Plaintiff's family member and had the apparent ability to carry out his threats, Plaintiff demanded that he leave her alone, and Defendant Price continued his harassment after that demand.

121. As a direct and proximate result of Defendant Price's stalking, Plaintiff suffered actual damages, including fear, humiliation, loss of peace, loss of safety in her home, mental anguish, anxiety, depression, post-traumatic stress symptoms, disruption of her daily life, relocation-related harm, and other damages within the jurisdictional limits of this Court.

122. Plaintiff seeks recovery of actual damages under Tex. Civ. Prac. & Rem. Code § 85.004. Plaintiff further seeks exemplary damages because Defendant Price's conduct was intentional, malicious, oppressive, and carried out with conscious indifference to Plaintiff's rights, safety, dignity, and emotional well-being.

## V.DAMAGES

123. As a direct and proximate result of the occurrence made the basis of this lawsuit, Defendants' acts as described herein, Plaintiff suffered: Emotional distress and mental anguish; Loss of liberty and violation of constitutional rights; Legal expenses and costs; Out-of-pocket expenses, including bond payment; Exemplary and punitive damages.

124. Plaintiff suffered and endured anxiety, resulting in mental anguish and damages more fully set forth below.

125. As a direct and proximate result of the occurrence made the basis of this lawsuit,

126. Plaintiff has incurred the following damages:

a. Reasonable medical care and expenses in the past. These expenses were incurred by Plaintiff for the necessary care and treatment of their mental injuries resulting from the incident complained of herein, and such charges are reasonable and were usual and customary charges for such services in Harris County, Texas.

b. Reasonable and necessary medical care and expenses which will, in all reasonable

probability, be incurred in the future;

c. Mental anguish in the past and Mental anguish in the future;

d. Punitive damages.

127. Plaintiff respectfully requests judgment against Defendant Kenneth D. Price a/k/a Daniel Price for actual damages, exemplary damages, costs of court, pre-judgment and post-judgment interest, and all other relief to which Plaintiff is justly entitled.

## VII. PRAYER FOR RELIEF

Plaintiff prays for judgment on his behalf against Defendant and asks this Court, after impaneling a jury and accepting the presentation of evidence, to enter judgment in favor of Plaintiff and against Defendant and to be identified in at least the following particulars:

A. Enter judgment for Plaintiff against Defendant;

B. Award damages to Plaintiff for the violation of his Constitutional rights claims;

C. Award pre-and post-judgment interest;

D. Award punitive damages against Defendant;

E. Cost of court; and

F. Grant such other and further relief as appears reasonable and just, to which Plaintiff shows herself entitled.

Respectfully submitted:
By: /s/U.A. Lewis
U.A. Lewis
SBN: 24076511

FBN: 1645666
P.O. Box 27353
Houston, TX 77227
T: (713) 570-6555
F: (713) 581-1017
myattorneyatlaw@gmail.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and the foregoing document has been sent to all known counsel by first-class mail, electronic mail, telecopy, hand delivery, and/or certified mail, return receipt requested, to all parties of record who have made an appearance in this case on May 11, 2026.

**/s/ U.A. Lewis**

**U.A. Lewis**